UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GLENDA M. MEJIA,                                              Case No.  17-cv-2696

                              Plaintiff,
      v.                                                          **COMPLAINT**

CITY OF NEW YORK,
NEW YORK CITY POLICE DEPARTMENT,
PATROLMAN BENEVOLENT ASSOCIATION
OF THE HUMAN RESOURCES ADMINISTRATION
OF THE CITY OF NEW YORK, INC.,
WILLIAM JOSEPH BRATTON individually and in his official capacity,
CAROL ANN ROBERSON individually and in her official capacity,
OFFICER WALLACE individually and in his official capacity,
SERGEANT BERNAL individually and in his official capacity,
and
OFFICER OPROMALLA individually and in his official capacity,

                              Defendants.
-------------------------------------------------------------X

Plaintiff, GLENDA M. MEJIA, through her counsel, Derek Smith Law Group, PLLC, hereby complains of the Defendant, upon information and belief, as follows:

**NATURE OF CASE**

1. Plaintiff complains pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1983, The New York State Executive Law, The New York City Administrative Code, New York City Human Rights Law, and seeks damages to redress the injuries Plaintiff suffered as a result of being exposed to a race discrimination, sexual harassment, gender discrimination, age discrimination, disability discrimination, hostile work environment, and wrongful termination.

1

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

3. This action involves a Question of Federal Law.

4. Venue is proper in this district pursuant to 20 U.S.C. §1391(b) because Defendants, were located in this judicial district and a substantial part of the events which give rise to the claims herein occurred in this district.

## PARTIES

5. At all times material, Plaintiff GLENDA M. MEJIA (hereinafter also referred to as "Plaintiff") is a thirty-four (34) year old individual Hispanic woman who is a resident of the State of New York and resides the County of Queens.

6. At all times material, Defendant NEW YORK CITY (hereinafter also referred to as "NYC", "Defendant", or "Defendants") operating through and in conjunction with the NEW YORK CITY POLICE DEPARTMENT ("NYPD") is a municipal entity created and authorized under the laws of the State of New York. It is authorized under the laws of the State of New York to maintain, operate, and govern a police department, the NYPD, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.

7. At all times material, Defendant PATROLMAN BENEVOLENT ASSOCIATION OF THE HUMAN RESOURCES ADMINISTRATION OF THE CITY OF NEW YORK INC., (hereinafter also referred to as "PATROLMAN BENEVOLENT ASSOCIATION,"

"Defendant", or "Defendants") is a Domestic not-for-profit corporation created and authorized under the laws of the State of New York.

8. At all times material, Defendant WILLIAM JOSEPH BRATTON (hereinafter also referred to as "BRATTON," "Defendant", or "Defendants") is an individual man who is believed to be a resident of the State of New York and reside in the City of New York, County of New York. At the time of Plaintiff's employment, Defendant BRATTON served as the Police Commissioner in New York City.

9. At all times material, Defendant CAROL ANN ROBERSON hereinafter also referred to as "ROBERSON," "Defendant", or "Defendants") is an individual woman who is believed to be a resident of the State of New York and reside in the City of New York, County of New York. At the time of Plaintiff's employment, Defendant ROBERSON served as the Assistant Commissioner of Training for the NYPD Academy.

10. At all times material, Defendant Officer WALLACE (hereinafter also referred to as "WALLACE," "Defendant", or "Defendants") is an individual man who is believed to be a resident of the State of New York and reside in the City of New York, County of New York.

11. At all times material, Defendant Sergeant BERNAL (hereinafter also referred to as "BERNAL," "Defendant", or "Defendants") is an individual man who is believed to be a resident of the State of New York and resides in the City of New York, County of New York.

12. At all times material, Defendant Officer OPROMALLA (hereinafter also referred to as "OPROMALLA," "Defendant", or "Defendants") is an individual man who is believed to be a resident of the State of New York and reside in the City of New York, County of New York.

13. At all times material, Defendants are considered an employer under the New York State Executive Law, New York Labor Law, and New York City Administrative Code.

## STATEMENT OF FACTS

14. Around January 8, 2014, P laintiff, a graduate in Criminal Justice from St. John's University began her employment with Defendant NYPD as a probationary police officer.

15. She gave up a well-paying job to join the NYPD Academy in order fulfill her dream of becoming an officer.

16. Out of the twenty-seven (27) recruits in Plaintiff's group, four were women.

17. As Plaintiff was in her thirties, she stood out from the other probationary police officers in her group and the Academy, who were generally in the twenties.

18. Plaintiff was required to pass several exams to complete the NYPD Academy. Plaintiff successfully passed all academics and had only one physical exam to complete the NYPD Academy, a one-mile run.

19. Plaintiff was scheduled to complete the NYPD Academy by July 2014.

20. Male supervisors/instructors at the NYPD Academy scrutinized woman and were especially harder on the women than on their male counterparts.

21. By way of example only, supervisors subjected more women than men to the punishment of taking a candidate's meals away and forcing the female candidates to run during meal times.

22. On February 17, 2014, Plaintiff began to develop severe shin splints because of the rigorous training. As the shin splints progressively worsened, she became injured to the

point where training became extremely painful and the muscles surrounding her lower legs were constantly inflamed.

23. At all times prior to this initial injury, Plaintiff was at the peak of physical fitness.

24. It was common for officers to sustain injuries during training, however, injuries rarely interfered in the completion of the program. Even those who underwent surgery for injuries sustained during training were allowed to continue the program and eventually graduate.

25. Throughout the duration of Plaintiff's recovery, Defendants placed Plaintiff on restricted duty. Plaintiff was prohibited from participating in any physical training for about four weeks.

26. Restricted duty status requires medical clearance before a candidate may resume physical activity.

27. On February 24, 2015, despite her restricted duty status, Defendants mandated Plaintiff to perform the strenuous activity, such as running, although she was physically unable and on restricted duty. against policy for candidates on restricted duty,

28. Plaintiff objected by stating she was not cleared, however, her instructors continued to push her knowing that the shin splints could develop into much more serious stress fractures if she did not adequately recover.

29. Plaintiff was afraid that if she did not attempt to perform physically, she would be pushed out of the academy.

30. Sure enough, because Defendants forced Plaintiff to run and train, the constant pounding and lack of recovery fractured Plaintiff's tibia. This caused her even more physical pain and limited her ability to walk.

31. As a result of the now fractured tibia, Plaintiff's personal doctor ordered her on restricted duty for another three months.

32. After the tibia injury, Plaintiff dislocated a disc in her vertebra while training, forcing her back onto restricted duty for an additional four months.

33. Defendants failed to provide Plaintiff with a reasonable accommodation for her disability and further discriminated against Plaintiff because of her disability and because she is a Hispanic woman and because of her age.

34. Although Plaintiff was aware of the hostile environment towards the women before her injuries, the discrimination against her as a woman and for being Hispanic even increased after her injuries.

35. Throughout Plaintiff's duration at the academy, several officers and instructors further subjected her to sexual harassment. Additionally, in a discriminatory fashion, they would frequently humiliate, ridicule and denigrate Plaintiff by making discriminatory comments about Plaintiff's gender, age, and race.

36. Habitually, Gym Supervisor Sergeant BERNAL, a male, told Plaintiff to resign because Plaintiff was not fit to be an officer.

37. Sergeant BERNAL told Plaintiff to resign because Plaintiff was "**TOO OLD**," "**ALL BRAINS AND NOT FIT FOR THIS,**" and "**IT WAS LATE FOR HER**."

38. Sergeant BERNAL made the above comments because of Plaintiff's age, gender, race, national origin and disability.

39. Sergeant BERNAL made comments regarding Plaintiff's weight and told her she needed to lose weight.

40. Sergeant BERNAL, did not make such discriminatory comments towards male candidates in regards to their weight.

41. Officer OPROMALLA, a male Academy Gym Instructor suggested Plaintiff take "**PRIVATE SESSIONS**" with him outside of the Academy to "**GET YOU PHYSICALLY BETTER**" because it would help Plaintiff.

42. Officer OPROMALLA was telling the Plaintiff the above so that he could have sex with Plaintiff. The so called private sessions were really suggesting that Plaintiff and he would have sex.

43. Off duty training by supervisors was strictly prohibited by the NYPD Academy's policy.

44. Plaintiff continually declined and said "no" to these Officer OPROMALLA's extremely uncomfortable and unwanted sexual advances. Officer OPROMALLA became increasingly hostile after being rejected.

45. Not only was this a sexually hostile work environment, this also constituted quid pro quo sexual harassment.

46. Officer OPROMALLA did not offer these "private" offsite lessons to male candidates.

47. Officer OPROMALLA sexually harassed Plaintiff and attempted to involve Plaintiff into *quid pro quo* sexual harassment.

48. Union Representative for the Patrolman Benevolent Association, Officer WALLACE stated to Plaintiff that she was an "**ATTRACTIVE FEMALE WITH A STRONG PERSONALITY**," "**YOU'LL NEVER MAKE IT AS AN OFFICER BECAUSE**

**YOU'RE A BITCH**," and "**YOU'RE AN ATTRACTIVE FEMALE SO YOU NEED TO LEARN HOW TO PLAY THE GAME**."

49. Officer WALLACE was telling Plaintiff that she needed to have sex with her supervisors and that Plaintiff failed to conform to the stereotypical gender roles.

50. Officer WALLACE told Plaintiff that she was being referred to as a "**BITCH**" by Sergeants.

51. Officer WALLACE's discriminatory language offended Plaintiff and she became afraid of her standing within the Academy.

52. Officer WALLACE did not comment on the physical attributes of any male candidates.

53. Learning to "play the game" meant she was not like many other women who reciprocated instructor's flirting, dated the instructors and were of the mentality that women needed to have sex with their instructors.

54. Plaintiff knew if she played the game by having sex with her instructors, life at the NYPD Academy would be easier and she had better odds of getting into a good precinct.

55. Around August 2014, Plaintiff suffered a second injury while at the NYPD Academy and was placed on restricted duty.

56. From August-September 2014, Sergeant HONAN falsely accused Plaintiff of malingering.

57. Sergeant HONAN made the above accusation because of Plaintiff's age, gender, race, national origin, and disability.

58. Although Plaintiff was on restricted duty, Defendants instructed Plaintiff to train for her last physical test.

59. On December 23, 2015, Plaintiff filed a request with the department's legal bureau to get a copy of her file. However, she was never given a response other than her request had been assigned, and, to this day, there has been no other response regarding her record.

60. On January 19, 2015, Plaintiff's personal doctor declared she was able to return to work at full capacity and ready for active for duty.

61. On January 22, 2015, Plaintiff visited the NYPD department's clinic to provide documentation to resume full activity and finish the training. However, the clinic refused to go by her personal doctor's orders and gave her a follow-up appointment for February 24, 2015.

62. The morning of February 3, 2015, Plaintiff was taken to a private room by Lieutenant ROMANO, a female, and Officer MAI, a male. There, Defendants terminated Plaintiff.

63. At times material, Plaintiff opposed the unlawful conduct as stated herein.

64. Defendants terminated Plaintiff because she is a woman, Hispanic, because of her age, because of her disability, because she refused the sexual advances of superiors, and because of her complaints of and opposition to the unlawful conduct as stated herein.

65. In wrongfully terminating her, Defendants gave Plaintiff a document dated February 2, 2015, stating her services as a probationary officer was terminated but a reason was not provided.

66. Knowing about the suspicious circumstances of Plaintiff's termination, Lieutenant ROMANO quietly suggested that Plaintiff "should get a lawyer."

67. After Plaintiff's notice of termination, Plaintiff was humiliatingly escorted out of the building, like a criminal, which was not typical procedure at the Academy.

68. Human Resource for the NYPD and Plaintiff's union notified her because she was terminated, she would be blacklisted from holding federal, state, and city jobs.

69. To this day, as a result of being blacklisted by the Defendants, Plaintiff cannot apply to such government opportunities and is subsequently unable to use her Master's degree in Criminal Justice Leadership.

70. All other females, younger recruits, and non-Hispanic who suffered injuries and were allowed to complete the NYPD Academy.

71. Defendants targeted Plaintiff because of Plaintiff's age, gender, race, national origin, and disability.

72. The police academy has a well-documented history of negative treatment and retaliation against candidates who make complaints about the way they are treated.

73. The NYPD Academy has a very sexual culture. Some female candidates in the NYPD Academy have "relationships" with officers in order to receive favorable treatment. These other female candidates "played the game" and went on to become officers.

74. Plaintiff refused to "play the game" and Defendants wrongfully terminated her employment.

75. At all times material, Defendants acted with deliberate indifference to the discrimination.

76. As a result of the discrimination and retaliatory conduct, Plaintiff gained forty (40) pounds due to the stress of not being able to pursue her dream of becoming a New York City police officer.

77. As a result of Defendants' continued harassment of Plaintiff, she suffered numerous injuries including physical, economic, and emotional damages.

78. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, Plaintiff suffers from high stress, anxiety, and experiences trust issues with men in the work environments, in addition to physical ailments.

79. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

80. As Defendants' conduct has been malicious, reckless, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against Defendants.

81. The above are just some of the examples of unlawful discrimination and retaliation to which the Defendants subjected Plaintiff on an ongoing continuous basis.

## AS A FIRST CAUSE OF ACTION: DISCRIMINATION AND RETALIATION UNDER FEDERAL LAW
## 42 U.S.C. Section 1981
## [AGAINST ALL DEFENDANTS]

82. The above are just some of the examples of unlawful discrimination and retaliation to which the Defendants subjected Plaintiff on an ongoing continuous basis.

83. Plaintiff, individually and on be half of all persons similarly situated, repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

84. 42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the

full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no ot her. (b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

85. Plaintiff, as a member of the Hispanic race, was discriminated against by Defendants because of race as provided under 42 USC Section 1981 and has suffered damages as set forth herein. Plaintiff also claims unlawful retaliation under 42 U.S.C. 1981 for opposition to Defendants' unlawful employment practices.

### AS A SECOND CAUSE OF ACTION: DISCRIMINATION AND DUE PROCESS UNDER FEDERAL LAW
### 42 U.S.C. Section 1983
### [AGAINST ALL DEFENDANTS]

86. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

87. Plaintiff claims Defendants violated 42 U.S.C. § 1983, which states in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

88. The Fourteenth Amendment of the United States Constitution states in relevant part that "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

89. Plaintiff is a female whom Defendants denied equal protection of the laws by discriminating against her on the basis of her gender, race, disability, and age.

90. Furthermore, Defendants deprived Plaintiff of her constitutional rights by taking away Plaintiff's property rights in her employment without due process.

### AS A THIRD CAUSE OF ACTION: DISCRIMINATION UNDER NEW YORK STATE LAW [AGAINST ALL DEFENDANTS]

91. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

92. New York State Executive Law § 296 pr ovides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

93. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her Hispanic race, age, disability, sex/gender, together with sexual harassment, causing a hostile work environment and wrongful termination.

94. Plaintiff hereby makes a cl aim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

### AS A FOURTH CAUSE OF ACTION: RETALIATION UNDER NEW YORK STATE LAW [AGAINST ALL DEFENDANTS]

95. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

96. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

97. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment on the basis of Plaintiff's opposition to the unlawful practices of Defendants.

98. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

**AS A FIFTH CAUSE OF ACTION: AID AND ABET
UNDER NEW YORK STATE LAW
[AGAINST ALL DEFENDANTS]**

99. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

100. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

101. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the unlawful, discriminatory, and retaliatory conduct as stated herein.

102. Plaintiff Mejia makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

**AS A SIXTH CAUSE OF ACTION: DISCRIMINATION
UNDER NEW YORK CITY LAW
[AGAINST ALL DEFENDANTS]**

103. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

104. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

105. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of gender discrimination, race discrimination, and hostile work environment.

106. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

### AS A SEVENTH CAUSE OF ACTION: RETALIATION UNDER NEW YORK CITY LAW [AGAINST ALL DEFENDANTS]

107. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

108. The New York City Administrative Code Tide 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

109. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8 -107(1)(e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS A EIGHTH CAUSE OF ACTION: AID AND ABET
### UNDER NEW YORK CITY LAW
### [AGAINST ALL DEFENDANTS]

110. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

111. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

112. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8 -107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### AS A NINTH CAUSE OF ACTION: INTERFERENCE WITH PROTECTED RIGHTS
### UNDER NEW YORK CITY LAW
### [AGAINST ALL DEFENDANTS]

113. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

114. New York City Administrative Code Title 8-107(19) Interference with protected rights.

115. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

116. Defendants violated the section cited herein as set forth.

### AS A TENTH OF CAUSE OF ACTION: SUPERVISORY LIABILITY UNDER NEW YORK CITY LAW [AGAINST ALL DEFENDANTS]

117. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint.

118. Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides:

> A. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
> B. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
>   i. The employee or agent exercised managerial or supervisory responsibility; or
>   ii. The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
>   iii. The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

119. Defendants violated the above section as set forth herein.

## **JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all damages including compensatory, emotional distress, statutory, punitive damages, attorneys fees and costs in an amount to be determined at the time of trial and awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful conduct.

Dated:   New York, New York
         May 1, 2017

                                          Respectfully submitted,

                                          DEREK T. SMITH LAW GROUP. P.C.
                                          *Attorneys for Plaintiff*

                                          _____
                                          By: Derek T. Smith
                                          30 Broad Street, 35th Floor
                                          New York, NY 10004
                                          (212)-587-0760